The counsel for the appellees filed the following petition for a re-hearing.
The counsel for Bate feel themselves constrained to ask of the court, respectfully, a reconsideration of this cause, for the following reasons, to wit: /■
1. We do understand some facts in the cause, different from that which the court assumes them to be, in the opinion rendered.
2. The decision is new, and based on principles never before recegnized by this court, and such as -were not even asserted to exist, by the counsel for the appellants.
3. It is, with due deference, asserted that the principles assumed, conflict with former opinions of this court; that the conclusion drawn, is not sustained by the premises assumed; and that the reasons for the opinion are not reconcileable with each other.
We will give a specimen or two of the facts, which we conceive are assumed as existing in the record, and *348 which we believe are not there. In doing this, we will use and refer to the diagram, annexed by the court, to the opinien'jdelivered.
lids assumed that there is an ancient marked line» from H towards l or X. Wejcanfind no such proof. On the other hand, it is clearly and positively shown to be not exceeding ten or twelve years of age, by counting the demarkations of the timber. The aniiquity of that line was not pretended in the court below. It is negatived by the- report of thejsurveyor and his oath, as well as other witnesses.
There is maritime mention made of an ancient line from H, but it is an extension from H towards F, and a simple continuation of the line from R 10 to H. This, is the one really mentioned as ancient, and corresponding with the survey, and it is difficult to account for its existence, if, as the court supposes, Madison stopped at JÍ. But if it is not the true corner, the solution is easy. It is this extended line which the jury mention, and name in their verdict.
The court seems to suppose that the jury rendered their verdict, extending from 15 to B, and thence to H. Such, it is believed, is not the form of the verdict. They never strike the line II I, or towards X, as the courthas laid their verdict down. On the contrary, they extend the line from 15, to the line from F to II, extended to a point 40 poles distant, from H towards F, and thence passing H to R 10. The true form of the verdict is laid down on the argumentative plat, attached to the brief of the appellee. There is, therefore, no such thing as abolishing calls,for making more-than the patent allows, as the court supposes. The verdict has, in this respect, the same number of courses which the patent gives, and the only variance between the patent and the verdict, is the difference in distance from R 10 to H, and 40 poles beyond II, and the difference in course and distance from, the end of that 40 poles to 15.
Now, let it be remembered, that on this point, there was no instruction of the court to the prejudice of the appellants, and excepted to. The jury, as we contended and still contend, ought not only to have extended the line, R 10, H, 40 poles beyond H,.but to a point that *349 would be intersected by a line running the patent course from 15. If this had been the shape of the verdict, there would have been no difference between it and the patent, except the additional length that would have been added to the line R 10, H. This was what we wished to be understood as the true mark of closing the survey, instead of the mark adopted by the jury; for we could not see why the jury stopped the line 40 beyond H, where the marks stopped, instead of extending, according to all previous divisions, to the intersecting point. But as the jury had, in this instance, erred against us, we could not see how the opposite party could complain of it.
Again the court, according to the reference, supposes that we contended that the line should have been run from 15 to F. We certainly did not intend to communicate the idea, that there ever was or ever ought to be such a corner- as F, or such a line as F A. Such a figure and such a line was not conceived of by us, nor do we find evidence to support it. But if a line was extended the patent course from 15, till it would produce an intersection by the extension of the line R 10, H, then such a corner would be produced as would correspond with what we contended the figure to be. For we must insist, that finding the old line 40 poles beyond H, agreeing in the annulations is conclusive, that H is nota corner of Madison’s. No blocks were ever taken from the corner trees at II, and they are not shown to be as-old as the survey; andas the court remarks, they may appear ancient, but not ancient enough.
But to touch on the law assumed by the court. When fixing on the closing lines of Mercer, and deciding that the fraction, 30 poles from T A was the ancient line, the court concludes that the fraction ought not to govern the whole extent of the line, and says, “We know of no decision of this or any other court, which requires, that when only a section of the line is marked, the general course of that section, shall, if variant from the patent course, be pursued, when there is no marked line, nor can we admit that such a rule would be consistent with truth or reason.”
A similar assertion was made in the closing argument, which the counsel for the appellees did not repel, because, we thought it too well settled to need authority, *350 To show the court that the uniform decisions of this-court is to the contrary, we wmuld refer the court to the case of Thornberry vs. Churchill and wife, IV Mon., 32, (a case expressly in point,) together with three other concurring cases there cited.
This court seems to think that the section, uif variant from, the patent coursef cannot govern the whole line. It is believed, that when the section is variant from the patent, is the very case in which it does govern. For if it did not vary from the patent course, what need is there of it, or the doctrine either; and why has the court been called upon to decide the influence of these sections of lines? Why say any thing about them, or notice where they lay on the patent course? The fact is, they control the patent course, and for that reason they are noticed.
The counsel for appellees cannot see how this doctrine is so contrary to, or “inconsistent with, truth or reason.” The existence of the section, proves that the original surveyor did not cause the line to be marked on the true corner. The line ends because the marked corner, or because the timber has disappeared by decay or the improvements of the country. Which way did it run after the marks cease? Is not the course it started the best index? Is it not a more natural presumption, that with an inanimate instrument, or with his needle cutting a mistaken degree, he had kept his codrse, than that he had turned it, and made an angle in the line which he returned, on his oath, to be a straight line?
True, if the corner is found ahead, the line, after the influence of the section ends, must bend towards the • corner. But if a corner .cannot be found, (as in this case, wíiere none is called for) at the end of the section running from T A, then the1 section is the proper index to the point where the corner is to be fixed, till the distance is ended. The plat and certificate, and patent, all of record, declares it straight; it is, therefore, right to say, the. surveyor run straight, though at a mistaken degree, than to presume and fix, by construction only, a crooked line against all the written evidence.
What makes the mode adopted to close Mercer still more objectionable is, if, at the termination of the 30 *351 pole3 from T A, the course and distance is adopted, it is still less favorable to Mercer. But the court has, by construction, not dropped the influence of the sectional line to follow the patent in course* but to mark a course still more “variant” from that called for, for the purpose of closing. On these two closing lines of Mercer, if such they can be called, the calls for course in thfe patent, are evidently mistaken. Some other matter besides the course called for, must settle them. Is there. any thing that ought to have as much weight in doing this, as the part of one line still remaining evidently run by the originalsurveyor himself? The authorities referred to, settle this, or settle nothing. The reliance placed on the figure of the original plat of Mercer, liray be hereafter noticed*
But the part of the opinion under consideration, which tears Madison from Mercer, and stops him far short of Mercer’s objects, though he calls for them, is that which deserves the most serious consideration, not only because it is of the most serious consequences to the appellees, but because it contains doctrine entirely new.
The court correctly decides, that no limitation given to surplus, can so operate as to stop those claims short of the objects called for, and it is also conceded, that if the objects called for, are objects actually existing, and can be found, the surveys must run to them, at the expense of all other calls, and even at the expense or destruction of the shape of the plat and certificate.
But the position which is called new, then follows, to-wit: that if the objects called for are idealj or the lines called for are not marked, then the adjoining survey shall stop short thereof, and has no right to extend to them, disregarding of other calls. It is a doctrine' never heretofore applied in adjudicating on boundary in this country, so far as we know. It was not advanced by the learned counsel of the appellants, so that it might have met a reply. Its consequences are not easily foreseen, and as there are many lines left open, owing to the witchery in which surveyors acted, and the dangers that surrounded them, it may be fatal. For it is a doctrine that will rend bounds and limits, hereafter to be fixed by a series of adjudications.
*352 With due respect, the counsel for the appellees, will venture to assail this position. It is an old and valúa- . ble maxim, id c rium est quad cerium rcddi potest. Sup- . pose a grant to be made in a square, and the surveyor has in fact run one line, and'marked the corners at each end thereof, and the grant lies On this base, and extends the course and distance, and names even supposed ‘corners, which do not exist in fact, and that another grant lays its base parallel to the demarked base of this, ata great distance from it, and with its base miso actually run, and no more, it calls to extend to adjoin the first on its open line parallel to the base; must such a call be disregarded? Could not the real position of the ■open line of the first grant, be ascertained by survey? and ought not the other to come to it? The court seems to say not. If the course and distance of the second came precisely to the line of the first, we suppose it must adjoin. But let it be supposed that it comes Within 5 poles, 10,100 or 500, must it have the vacancy between the two? Would it be required that it should leave the vacancy of 5 or 10 poles? It would seem unreasonable to do so. If these numbers can be allowed, what will be disallowed, and at what number of poles will the extension cease? If the doctrine be correct, it must leave out even one, and this will, among the great blotches of military surveys on Elkhorn and Beargrass, which extend even hundreds of poles to reach the open lines of each other, for which they call, leave out large quantities of land hitherto believed to have been appropriated. It is conceived that it cannot, with propriety, be said, thatt’nese supposed grants would be invalid at this day. A grant from the government, fixing the ground with certainty, is now good, although the surveyor may have failed to do his duty.
But if this doctrine be correct, the court has not-Correctly applied it. For there is no greater evidence that . the surve) or wasever at Mercer’s upper corner at D, on the riveri) than that he was at T A, off from the riven He called for them both by adoption, without visiting them, as certainly with respect to one as the other; yet Madison’s line, 3 D, on the river, is proved to be 100 poles too long or near it, yet the court has led Madison down to D in violation of the principle, and yet cannot .permit him to stretch a little further to reach T A. We *353 Would inquire, at what distance betwéen the two points he must stop. _
_ We would also respectfully insist, that the doctrine, if sound, cannot apply to this case, and that the princi-pie of adjoining surveys reaching actual boundary, must apply.
Let it be recollected, that the corner at D, on the river, is fixed and certain, and was actually marked. The court has also ascertained, that the corner at T, is also fixed, certain and marked. Now, the extremes of this open line or lines are actually existing marked boundaries, and the line between them can be fixed, if not as contended for, at least as the court has settled it, by construction. Here then are two actually existing objects, such as the court has said a grant must reach to,, and yet it is permitted to reach one, but is forbidden to touch the other! Add to this, there is a line leading from T A towards the river 30 or 32 poles, which the court has correctly determinedto be the actual marked line, done at the date of the original survey; and there is no such marked line leading fromD, as the court has ■determined, yet we are allowed to reach 1) without a line, and refused permission to come to T A, possessing both a corner and thirty poles of the line to be adjoined-.
Still more, the patent of Madison not only calls for the corner at T A, but runs from it with Mercer's back line. Its calls are “then with Mercer's end line S 62, to (“his precise course”) 116 poles to two buckeyes and sugar tree in said line." Here, certainly, is not only the corner T A, and a sectional line of 30 poles towards the river, but also 116 poles move ofline, marked beyond all question, according to both proof and verdict, called for to be adjoined, and yet the court will not permit us •to adjoin! There is a positive call for two existing corners, and 148 poles of actual marked line, made long before, and a corner on one of them, and only one corner is allowed as a good call, and the other at this great length of line forbidden!
We would, with deference, ask by what rule can this he done? If thus much actually marked lines and two ■corners will not allow us to approach,how much would? How great extent of marked line between T A and I), ■and from T towards M, permit junction? This limit *354 would be hard to settle, and if anew rule is indefinite j an<^ no^ susceptiMe of. a reasonable limitation, it is a good reason for its rejection. We cannot^ therefore, forbid the hope that the court will apply the rule first spoken of in the opinion under consideration, that “if Mercer’s closing line had been marked, [throughout its whole extent,] it could not be denied that the line (so marked) would be also a line of Madison, beacuse calling for, he adopted it as it was, and wherever it was, he would have a right to go.” Such a rule with the small exception which will be noticed, has been the uniform rule of this court since it'had existence, as will be shown by numerous authorities. Rut even in this rule, we do not admire the expressions, “throughout its whole extent.” It is enough if it is partially marked. Can the -court mean to say, that an omission to mark for 5, 10 or 100 poles would be fatal to the call? Suppose the line to have run through a prairie for part of the distance, must the call be lost on that account? It is sufficient, if enough is marked to identify it, and render it capable of being found and known. Enough to give certainty, is enough to make it a good call, and that will save the grant. We are unable to discover thatmore is necessary to answer the reasonable demands of law. We cannot help remarking, that in all this, the court has not once named the actually marked end line of Mercer, for 116 poles. This is marked throughout, and why then will it not answer as a good call for ,the adoption of Madison?
We now pass to another consideration. The court assumes the fact that H is certainly marked for Madison. It is not enough that the court should be satisfied of this fact while revising the verdict of a jury. There are facts and presumptions conducing to prove both the affimative and negative of this, and if the jury had found either way, this court ought not to disturb the finding, according to well settled authorities. The jury, as has been shown, did not find the fact, but found the line, as has been shown, to extend 40 poles with the ancient marks, beyond H towards P, and then stopped, and only name 11 in the verdict, as an object by which •the line passes. We, therefore, respectfully submit the question, whether the court has not gone too far in oversetting the verdict, by finding this fact against it.
*355 Let us, however, concede for a moment, that H was marked for Madison, and that the surveyor, when making the survey, barely started from Griffin’s lower ner, on the river, or if you please, at Griffin’s lower outward corner, and then run with his line to G, thence to R 10, thence to H, and that he there ceased, and supposed lines, by the calculation of the distance on the river, and the mistaken calls of Mercer’s supposed open lines, running from the river, that he would, according to his calculation, drop on Mercer, by a line of the patent course from H, and that he would then go with Mercer’s end line to his corner, and with his lines to the river. But that in making his calculation or protraction, he was deceived by the mistaken calls of Mercer, running from the river, and that when his mark was actually surveyed, as the court has protracted, he would not touch Mercer, and extend with his end line 116, to the corner T 'A, but would have to run to a point opposite to 15, and then to 15, to do so; and under this mistake the grant issued; can it be maintained that the grant is limited by this intention and mistaken calculation of the surveyor, by the words of the grant? Has the government a right to say to him, “your grant must be limited by what your surveyor intended in his own mind, and not by its calls, and that upwards of half a century after the grant has issued, and after all the agents concerned in making the survey are no more?” Precarious indeed will our land titles be, if the intention of a surveyor, inferred from circumstances thirty years after his death, is to overrate the express calls of a grant, forty years after i t issued! It Is a clear principle, that if the surveyor was alive, and was introduced to prove his owm acts and thoughts, for the purpose of destroying the effect of plain, palpable and certain calls in a grant, he would not be competent. How then can his presumed intentions effectuate what his oath could not? The grant must be ruled by its positive calls, if they can be found, (and they can here, without a doubt,) instead of any other proof.
Butthe court, from the circumstance of this supposed running of the surveyor, and the absence of lines 50 years afterwards, after the end of 40 poles beyond H, and from a corner opposite to 15 to 15, has inferred the intention of the surveyor. If his intention could limit *356 the grant, are not these circumstances toofweak? Is it not hazardous to conclude, that these never were lines, because they cannot be found at this late day, after so much time for the decay of timber, and so much destruction thereof by the rapid improvement of the country? And yet, from the absence of lines now, the court has inferred that the surveyor never intended to make them, but called for them at a supposed place where they were not, and the court now says, the grant shall go to the place where we suppose the surveyor intended, and not where they are actually found,7as the patent declares.. One intention, however, is evident, from the grant and from the surveyor himself. He certainly intended to appropriate and include all the land between Griffin and Mercer, and some land extending beyond and back of each list, there might not he enough. This, it is contended, is so evident, that it is sufficient to overrule all other inferences, even that potent evidence taken from the forms of the original plat.
To draw Madison/rom Mercer,fwould, by the same process of reasoning, ultimately draw him from Griffin, when assailed on the other side,and thus leave him vibra-r ting on his base from one to the other, as an assailant on either should give the impulse, and leave him nothing but the land common to the two surveys, each by course and distance, adjoining, the first, Griffin; the last, Mercer. For what is there to attach him to one more than the other? He calls for the two corners, the side line and part of the end line of Griffin; so he calls for the two corners, the side line or lines, and part of the end line of Mercer, what is the power of attraction which draws him closer to the former than the latter? We answer, nothing but an additional number of marked trees, and they add the preponderance of magnetic power; for there are certain objects on both sides.
To go backto supposed mistakes andhidden intentions of the surveyor, a supposed case may account for all the difficulty. The surveyor who made Mercer’s survey, began at his upper comer, on the river, run to the lower one, thence to the outer lower corner, thence to T A, thence towards the river, such a course as he had calculated would close, and ceased, designing to close by calculation; and after he made his calculation at home, discovered that it would require a change of his *357 course of one^degree to’bring'him to his beginning, on the river, and in tliis was he mistaken; and what produced (he mistake? Why, simply this. He had made all the lines longer than their tiue distance, and particularly, Mercer’s line upon the river, and thus his calculation on the distance of his notes or protraction was mistaken. For if the surplus distance be cut from Mercer’s lines, on the river, and all his lines put to the true length, it will be found that the courses of the two closing lines will close the survey or near it. 1'his solves the mistake in his closing lines. Now, if his intention and mistake is to control the' grant, as is supposed by the court in Madison’s case, Mercer ought not to reach his two upper corners; because, although he has two corners, one at 1), and the other at T A, yet the line or lines between them, for which he calls, have no demar-kation, and is an open or ideal line, and therefore, according to the reasoning of the court, he ought not to violate distance ¡to reach it,^because it is an understood, and not an actually marked line. It may be answered, that he must go to his actually marked corners, at D and T A. To this we reply, the reason is eq ually strong, that Madison should come to the same actually marked corners, and the call for them in the latter grant is, and ought to be equally as potent as the same calls in the former; for the court admits, that surplus cannot limit them, if actually marked.
The foregoing supposed mistake, will suffice to explain the mistake in both grants, but as we conceive, this mistake, which produced the one marked by Madison’s surveyor when at H, ought not to limit the grant, and it follows, that the mistake of Madison’s surveyor, ought not to have hadsaigreater?effect.
If H be the true corner of Madison, as the court supposes, it follows that Madison’s surveyor was misled by the mistake of Mercer’s, and its effect wa§ increased by a mistake of his own. For lie took Mercer’s survey from his record, calling for a base, on the river, of a certain length, when it was, in fact, far longer, and he added thereto the mistake of nearly 100 poles additional distance, on the river, in Mddison’s line. These two mistakes, together with an increase on other lines, added to the demand of a longer out line, parallel to the river, to drop Madison’s survey on both Griffin and Mercer, *358 and this accounts for all. But this can and ought not to control the positive call of either grant for actually marked boundaries, and both do. call tor such boundaries.
Se ^petition
The surveyor of Madison had a right to adopt Mercer’s survey from his records. It was evidence of what it said, (and evidence that ought not to be controlled by presumptions) and the original act directing surveys permitted the surveyor to adopt water courses, as well as the boundaries of others for his survey, and now, because there is a mistake in distance only, shall that mistake keep him from coming to actually existing objects.
We will here give a short answer to the figure of the original plats. It is no • part of the title. In many, the original plats were never returned, but only certificates. How can that shape control the calls marked boundaries, which alter the shape? This is against the whole current of decisions. Actually existing objects will overrule shape as certainly as an actual marked line will overrule course and distance.
Authorities on this as well as other points will hereafter be appended so soon as the time of counsel shall permit them to be collected.
In a case so important the counsel indulge the hope of a re-hearing.